1. Margaret Heckler was named as defendant, in her capacity as Secretary of Health and Human Services, at the commencement of this litigation. Since then, Otis R. Bowen has replaced her as secretary. Accordingly, pursuant to Fed. R.Civ.P. 25(d), Dr. Bowen is "automatically substituted as a party".

**Magdalena LUNA, et al., Plaintiffs,**

v.

**Otis R. BOWEN,[1] Secretary of Health and Human Services, Defendant.**

**No. 83–K–1431.**

United States District Court, D. Colorado.

July 31, 1986.

Christine Pacheco,-Ghelieh, Colorado Rural Legal Services, Inc., Pueblo, Colo., John Whitehouse Cobb, Roper, Lief, Mains & Cobb, Boulder, Colo., Bernard A. Poskus, Legal Aid Soc. of Metro Denver, Denver, Colo., R. Eric Solem, Pikes Peak Legal Services, Colorado Springs, Colo., Doug George, Colorado Rural Legal Services, Alamosa, Colo., for plaintiffs.

James Cage, Asst. U.S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a class action under Fed.R.Civ.P. 23(b)(3). Plaintiffs are all claimants for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq..* Plaintiffs allege their claims for benefits have been improperly adjudicated due to vague, unclear, illegal, and misleading policies of the Secretary of Health and Human Services regarding the evaluation of pain for disability purposes. Jurisdiction is found under 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1402.

Now before me are plaintiffs' motion for summary judgment and permanent injunction and defendant's motions for summary judgment and to vacate the order certifying this case as a class action. For the reasons set forth below, plaintiffs' motion for summary judgment and permanent injunction is granted in part and denied in part. Defendant's motions for summary judgment and vacation of the class certification order are denied. However, the order of class certification is amended, *sua sponte.*

## I. MOTIONS FOR SUMMARY JUDGMENT

### A. Standards of Decision

Summary judgment, pursuant to Fed.R. Civ.P. 56(c) is a drastic remedy, which is appropriate only where there exists no genuine issue of material fact. As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt. In order to determine the propriety of summary judgment, I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted. *United States, etc. v. Santa Fe Engineers, Inc.,* 515 F.Supp. 512 (D.Colo.1981).

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs assert that there is no genuine issue of material fact as to defendant's failure to evaluate their claims of disability caused by pain in a manner consistent with § 3 of the Social Security Disability Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A), so that they are entitled to judgment as a matter of law. I agree with plaintiffs that the secretary's execution of the DRA is illegal, but not for the reasons advanced by them. Plaintiffs and I agree that the secretary is impermissibly injecting a need for objective proof into the evaluation of pain for disability purposes. The secretary employs a two part test in determining disability based on pain. First, there must be a medically determinable impairment reasonably capable of producing the disabling pain alleged. Second, the claimant must in fact be disabled, i.e., the medical impairment must in fact produce the pain alleged.[2] Plaintiffs allege that in determining whether a claimant's medical condition in fact produces his alleged pain, (step 2), the secretary may not deny disability solely or primarily because the allegations of pain are not objectively supported. I agree with plaintiffs in this regard. I can not find, as a matter of law, that the secretary solely relies on objective proof in executing part 2 of his test. I do find, however, that the secretary primarily relies on objective medical evidence in this respect. Further, I find, *sua sponte,* that the secretary primarily and solely relies upon objective proof of a medical impairment, (step 1), in contravention of the Act.

Despite the differences between plaintiffs' and my perception of exactly how objective factors are illegally incorporated into pain evaluation, we share a view that the secretary's practices violate the Social Security Disability Reform Act of 1984. I find that the secretary's interpretive regulations are facially misleading and overbroad in derogation of congress' intent in passing the DRA. Additionally, defendant's internal policy and practice with respect to evaluating pain for social security disability purposes is clearly inconsistent with the DRA's mandate and is illegal. Plaintiffs motion for summary judgment is granted, but on grounds different from those advanced by the class members.

#### 1. The Secretary's Statutory Guidance

§ 3 of the DRA states, *inter alia:*

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as

---

2. In analyzing plaintiffs' claims, I am using both parties analytical model which is reflective of the two part test actually used by the secretary in evaluating pain based disability claims. I use this paradigm so that my finding of illegality by the secretary may be applied to the situation as it actually exists for the parties. However, the core of my ruling, as will be spelled out in greater detail, is that requiring objective proof of pain *at any stage of any analytical framework* is illegal. I mention this at the onset of this opinion so that there is no misunderstanding; this opinion and the orders herein contained may not legally be circumvented by the secretary's creation of a new analytical model to which some of the nomenclature and reasoning may not be applicable.

defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion that the individual is under disability.

42 U.S.C. § 423(d)(5)(A). This standard applies to all determinations (made by the secretary or a court on review) to be made before January 1, 1987, at which time Congress intends to set permanent standards for evaluating pain.

Before DRA's enactment, Congress had only tangentially addressed how pain is to be evaluated in determining whether a claimant is disabled:

The term "disability" means—

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months;

42 U.S.C. § 423(d)(1)(A);

... "a physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C. § 423(d)(3). These statutes are still in effect; the DRA is a supplement and not a supplantation.

### 2. The Secretary's Interpretive Regulations

With only the scintilla of guidance contained in the statutes before the DRA, and pursuant to his statutory authority, the secretary's successor promulgated interpretive regulations setting forth his method of evaluating pain for disability purposes:

*Symptoms, signs, and laboratory findings.*

Medical findings consist of symptoms, signs and laboratory findings:

(a) *Symptoms* are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.

(b) *Signs* are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation and contact with reality. They must also be shown by observable facts that can be medically described and evaluated.

(c) *Laboratory findings* are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. §§ 404.1528 and 416.928.

*How we evaluate symptoms, including pain.*

If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nerv-

ousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

20 C.F.R. §§ 404.1529 and 416.929.[3]

These regulations are still in effect, notwithstanding the recent enactment of the DRA. It is beyond cavil that a statute takes precedence over an interpretive regulation; to the extent that the regulations are inconsistent with the Act, they are illegal and unenforceable.

### 3. Proper Construction of the Act and Regulations

Neither § 3 of the Act, nor the secretary's regulations, require objective proof of disabling pain nor objective proof of a medical condition giving rise to disabling pain in the evaluation of pain for disability purposes.

Under the Act, a claimant's subjective allegations of pain will not alone support a determination of disability. The claimant must show that he suffers a medical impairment which could reasonably be expected to produce the alleged pain. This medical impairment must result from an anatomical, physiological *or psychological* abnormality. The abnormality must be shown to exist by the results of medically acceptable clinical or laboratory diagnostic tests. Accordingly, for a claimant to be

decreed disabled there must be, at the very least, acceptable tests showing an abnormality which gives him a medical impairment.

In the context of the instant controversy, a claimant may be determined disabled if there are medically acceptable clinical psychological tests showing a psychological abnormality giving rise to a medical impairment which could reasonably produce the pain alleged. There is not a requirement, as erroneously advanced by the secretary and a number of courts, that the medical impairment be "objectively" proved. The Act requires that there be "medically acceptable clinical or laboratory" tests. Clinical psychological and psychiatric testing techniques are medically acceptable, but are not, necessarily, "objective" in a strict sense. "Medically acceptable clinical or laboratory" proofs is not synonymous with "objective" proofs. While medically acceptable clinical or laboratory diagnostic techniques may show psychological abnormalities, the finding of psychological abnormality and the degree of abnormality are necessarily subjective. A medical doctor can see a bone sticking out of a calf, observe an x-ray of the lower portion of the tibia not connecting with its upper portion, and arrive at the conclusion that the leg is broken. Such is an objective analysis of a physical medical impairment. A psychiatrist can observe a pain contorted person clutching his ear, claiming he's Vincent Van Gogh, and arrive at the conclusion that this person is severely psychotic and dysfunctional. This is a subjective analysis of a psychological medical impairment. It is not always possible to find an objective basis for mental impairment because mental impairment is not subject to verification. Unlike the broken leg, the discernment of mental impairment in all its

**3.** Interpretive regulations 20 CFR §§ 404.1528 and 29 are authorized by 42 U.S.C. §§ 402, 405, 416, 421, 422, 423, 425 and 1302. 20 CFR subpart 404 concerns "Federal Old-Age, Survivors and Disability Insurance (1950——)". Interpretive regulations 20 C.F.R. 416.928, 29 are authorized by 42 U.S.C. 1302, 1382(c) and 1383. 20 CFR subpart 416 concerns "Supplemental

Security Income for the Aged, Blind and Disabled". Both sets of regulations are being challenged by the plaintiffs and are subject to the same analysis. For simplicity's sake, I will refer to §§ 404.1528 and 416.928 (identical regulations), as "404.1528". Similarly, §§ 404.1529 and 416.929 shall be noted as "404.1529."

varying degrees is not amenable to sensory or scientific measurement. The Act recognizes that pain, truly felt, is a reflection of the claimant's ultimately unverifiable mental processes.

█ The Act notes as much, in allowing a psychological abnormality to form the basis of a medical impairment. Hence, subjective factors, a claimant's allegations of pain, permit a finding of disability if grounded in "medical signs and findings established by medically acceptable ... techniques, which show the existence of a medical impairment that results from ... psychological abnormalities which could reasonably be expected to produce the pain ... alleged". 42 U.S.C. § 423(d)(5)(A). The Act clearly does not require objective proof of medical disability. Subjective complaints along with acceptable, but subjective, psychological diagnoses may be sufficient.

█ My construction of the Act is well supported by the language and structure of DRA § 3 itself. After stating in one sentence that signs and findings of medically acceptable tests showing a physical or mental medical impairment is a requisite to a disability determination, the statute then, in a separate sentence, states that objective medical evidence *must* be considered in the whole analysis. If Congress had intended that only objective factors could establish a medical impairment, it would have explicity and clearly stated as much. The statute properly requires that objective medical evidence be considered, but that an accepted clinical technique which shows psychological abnormality is sufficient. That the Act may properly be interpreted to dichotomize the evaluation of pain, indicates Congress' recognition, but not wholesale adoption, of the secretary's practice and policy. Congress structured § 3 first, to require clinical diagnostic signs and findings to establish a medical impairment, then, separately, to require that objective medical evidence be considered in determining disability. This is consistent with two pronged pain analysis used by the secretary at the time of the DRA's enactment. At the core of

the DRA, however, just like this ruling, is that while objective evidence, when it is found to exist, must be considered in determining pain related disability, the presence or absence of objective proof is not dispositive at any stage of the analysis being used nor in any form of an analysis which might be used.

*4. The Secretary's Execution of the Act.*

*a. Subversion of the Act and His Own Regulations*

Despite the Act's allowance of subjective factors supported by acceptable psychological diagnoses to establish the grounds for a disability determination, the secretary has developed a two pronged analytical framework for evaluating pain which requires *objective* proof of a medically determinable impairment before a finding of disability may be made. In response to plaintiffs' query as to "how complaints of pain are to be evaluated by disability adjudicators, in light of the enactment of § 3 of P.L. 98–460", DRA § 3, the secretary's representative has stated that

> Under our present policy for evaluating pain, there is a need to: (1) establish a medically determinable impairment which could reasonably be expected to produce the pain alleged, and (2) establish the extent to which statements of an individual or his/her physician as to the intensity and persistence of such pain or other symptoms may reasonably be accepted as consistent with the medical signs and findings.

Harris G. Factor, Director, Office of Regulations, Office of Policy, Social Security Administration, answer to plaintiffs' interrogatory no. 2, March 22, 1985. Another representative has reiterated a pain-claimant's need to establish a medically determinable impairment with *objective proofs:*

Q: Why don't you state for us what Social Security's policy on pain is, on the evaluation of pain for disability purposes. What is Social Security's policy?

A: Social Security's policy begins with the establishment of a medically determinable impairment. Once you have a

medically determinable impairment, you then address yourself to the question of pain …

Deposition of Jean Hall Hinckley,[4] July 23, 1984, p. 29, lines 10–16.

Q: Can you define what you mean by a medically determinable impairment?

A: Yes. The law says what it is, and it has to be established by *objective medical findings,* and if somebody's got the statute here, it is defined right in the statute.

Q: Okay. So, in other words, a medically determinable impairment cannot be established by subjective complaints and third party evidence—is that what you are saying?

A: That's correct, yes.

*Id.,* p. 29, lines 24–25, p. 30, lines 1–7.

■ It is unclear which statute Mrs. Hinckley is referring to. Since § 3 of the Act was not promulgated until October 9, 1984, she was certainly not alluding to that legislation. Most likely she was referring to 42 U.S.C. § 423(d)(3), which, as noted above, defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, *or psychological* abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." This statutory definition does not make objective proof a requisite to the finding of a medical impairment. It bears stressing that indicia of psychological abnormalities are inherently subjective. Herein lies the crux of the secretary's illegality. The SSA's reading of a need for objective proofs into the Act and the secretary's regulations is unwarranted and unduly restrictive. Under the Act, and a proper reading of the secretary's regulations, subjective factors *are* sufficient to establish pain-based disability if supported by acceptable psychological or psychiatric diagnoses indicating psychological or psychiatric abnormalities.

That I hold the Act permits subjective factors to establish disability where sup-

ported by medically acceptable, including psychological, diagnoses is not unique. A number of courts considering the recently enacted DRA have reached identical conclusions.

In *Benson v. Heckler,* 780 F.2d 16 (8th Cir.1985), the claimant alleged disability stemming from back and neck pain, a colon disorder and depression. She had been diagnosed as having an adjustment disorder with depression and anxiety, a dependant personality with avoidant traits, a glandular disorder, a sleep disorder and a spastic colon. The medical evidence also revealed general irritability, loss of appetite, feelings of hopelessness and a loss of self-esteem. *Id.,* 780 F.2d at 17.

In denying benefits, the hearing officer found that claimant did not suffer a mental or physical (i.e., "medical") impairment. In discounting appellant's subjective allegations of disabling pain, the ALJ noted that despite "numerous subjective complaints, the objective medical evidence does not substantiate any physical impairment that would give rise to pain as severe as she alleges." *Id.* In overturning the ALJ's determination that the claimant was not disabled because of her lack of objective proof of subjective allegations of pain, the 8th Circuit held

[T]he ALJ committed several errors that mandate a reversal. First, the ALJ improperly discounted appellant's allegations of pain because of lack of objective evidence of physical impairment. It is well established that it is error for an ALJ to discount allegations of pain solely because of lack of objective evidence … [t]he ALJ further erred by ignoring uncontradicted medical evidence that appellant's pain is psychological in origin … an ALJ may not ignore evidence of a psychological origin of pain.

*Id.,* 780 F.2d at 18 (citations omitted).

*Green v. Schweicker,* 749 F.2d 1066 (3rd Cir.1984), supports this construction that

---

4. Until June 25, 1984 Mrs. Hinckley was acting Associate Deputy Commissioner for Disability. At the time of her deposition she was without a formal title, but her job was principally to over-

see the formulation and drafting of the SSA's internal policy statements. *See* deposition. p. 4., lines 1–14.

objective medical evidence is not required in the second prong of the test, (the determination of whether the medical impairment in fact produces the pain alleged). There, the complainant's subjective allegations of dizziness were discounted by the ALJ for want of being "specifically reflected in medical records". *Id.*, 749 F.2d at 1070. The 3rd Circuit remanded this finding for reconsideration, holding that

> dismissal of subjective symptomology on the basis of an absence of direct medical evidence is at odds with the Third Circuit standard, the new statute (DRA of 1984), and the Secretary's own regulations ... the new statute does not require objective medical proof of each and every element of pain ... (the) Act and its legislative history, as well as the Secretary's own regulations, recognize that pain must be considered, can be disabling in itself, and is often not subject to strict medical proof. All the statute requires is that "there be medical signs and findings, established by medically accepted techniques which could reasonably be expected to produce the pain or other symptom alleged" ... Thus, while there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of pain.

*Id.*, 749 F.2d at 1070, 1071 (citations omitted).

The *Green* court's use of the term "objective" in describing the evidence needed to support the finding of a medical impairment unfortunately obfuscates the proper analysis. The statute is clear that psychological abnormality, established by acceptable clinical tests, may form the basis of the requisite medical impairment. Obviously, psychological tests are acceptable to prove psychological abnormality. Certainly, a psychological abnormality will rarely be proved by physiological (objective) tests. It is in this context that *Green's* use of "objective medical evidence" in describing what's necessary to support the existence of a medical impairment is, at best unfortunate and misleading, and, at worst, a blatant misconstruction of the act. The first

part of the above quoted excerpt from *Green*, evinces the court's use of "objective" is a semantic or linquistic mistake. Beyond doubt the law is that in certain cases subjective psychological or psychiatric evidence, if medically acceptable, is sufficient to form the basis of a medical impairment.

Misunderstanding of what a "medical impairment" or "medically determinable impairment" is, and how it is established, is the first problem with the secretary's execution of the DRA. In *Winn v. Heckler*, 762 F.2d 180 (1st Cir.1985), the First Circuit upheld an ALJ's denial of disability benefits on the ground that "there was no medical diagnosis of an impairment that could cause pain". *Id.*, 762 F.2d at 182. In doing so, however, the court noted that a "diagnosis of psychological disorder that transforms emotions into pain", *Id.*, is a sufficient basis for the finding of a medical or medically determinable impairment. *See Reinhart v. Secretary, Health and Human Services*, 733 F.2d 571, 772–73 (8th Cir.1984).

### b. The Regulations Are Illegally Misleading

■ A close reading of the secretary's regulation, which the Act closely tracks and was intended to codify substantially, reveals that subjective factors may form the basis of a medically determinable impairment if supported by competent and medically acceptable psychological diagnoses. The language and structure of the regulations, however, illegally obfuscate their fundamental meaning.

The Act clearly sets forth in one section, (in fact one sentence), that a psychological abnormality may form the basis of a medical impairment. As mentioned above, that subjective clinical psychological diagnoses may form the basis of a medical impairment follows logically from the Act's allowance of a psychological abnormality to form the basis of a medical impairment. The present regulations regarding pain evaluation, however, are set out in two sections. 404.1529 requires that "signs

and findings" be the basis of a medically determinable impairment which could reasonably produce the pain alleged. This section is void of reference to the amenability of a medically determinable impairment being satisfied by psychological or psychiatric signs and findings. The section states that it is applicable to a mental impairment, but its language and tenor implies that only physiological evidence can sustain a disability determination. That disabling pain may have a purely psychological origin, (and that a disability determination may be based on medically acceptable but inherently subjective psychiatric or psychological findings), is recognized only in a separate section, 404.1528.

I find that the secretary's interpretive regulations are facially misleading and overbroad in derogation of Congress' intent in passing the DRA. Additionally, defendant's internal policy and practice with respect to the evaluation of pain for social security disability purposes is clearly inconsistent with the DRA's mandate and are therefore illegal.

### c. The Secretary's Internal Regulations

■ Internal Social Security Regulation 82–58 further illustrates the secretary's illegal injection of an objective proof requisite into the determination of whether a medical condition which reasonably gives rise to the pain alleged exists. SSR 82–58, binding on SSA adjudicators advances a method of pain analysis which requires objective support of pain related disability at all stages of the pain evaluation. The first sentence of the "Policy Statement" in SSR 82–58 evinces the illegality of the secre-

tary's policy: "Once a medical condition ... is objectively established ..."

### d. The Secretary's Proposed Regulation

■ Further, the secretary's proposed regulations interpreting the Act evince an intent to continue the illegal imposition of a requisite objective basis upon an inherently subjective evaluation. Proposed regulation 20 CFR § 404.1529(b) states, in part:

Your symptoms, like pain, will not be found to significantly affect disability unless medical signs or findings show that a medically determinable impairment is present. Objective findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and which must reasonably be expected to produce the pain or other symptom alleged ...[5]

This proposed regulation inherits the flaws of its predecessor. The proposed regulation lacks recognition of the fact, in contravention of the Act, that truly felt pain is a reflection of the claimant's mental perception. The proposed regulation is overbroad, misleading and illegal in that it would subject pain, a partial function of the mind, to an analysis which focuses purely on pain's physiological sources. With its use of "objective findings" language, this proposed regulation could easily be interpreted so as to preclude psychological tests from providing the basis of a medically determinable impairment. It is distinct from the statute in that it requires "objec-

---

**5.** The last sentence of proposed 20 CFR § 404.1528(b) states:

When you allege pain, but the medical findings do not substantiate any physical impairment capable of producing the pain you allege, we *may* investigate the possibility of a medically determinable severe mental impairment as the basis for your pain (emphasis added).

While this ostensibly indicates that a psychologically based pain will not be subjected to objective proof, this proposed regulation is nonetheless flawed. First, the regulation read as a whole is still misleading and self-contradictory.

No psychological finding can, by the nature of psychology, be objective. Further, the implication of the regulation that a claimant's psychologically based pain will be evaluated in a fashion distinct from anatomically or physiologically based pain is illusory. When a credible claimant's allegations of pain are not corroborated by objective medical evidence, the secretary *may* analyze the claimant's pain under a mental impairment standard. Such claimant is not necessarily protected from having to demonstrate objectively his pain which is not always amenable to objective proof.

tive" evidence of the medically determinable impairment. The statute refers to objective evidence only in the determination of whether the medically determinable impairment has, in fact, produced the alleged pain. (And then objective proof is only one factor which must be considered.) As noted at length above, the Act does not require "objective" proof of a medical impairment. It only requires that the medical impairment be based upon medically acceptable, subjective or objective, psychological or physiological test results.

### 5. Primarily v. Solely

With respect to part two of the secretary's test, plaintiffs assert that the secretary's making objective corroboration of subjective allegations of pain the *primary* (as opposed to *sole*) criterion in determining disability is illegal under the DRA.

This request is slightly confusing. At times in their brief plaintiffs argue that premising non-disability solely on objective proof is illegal. At other times they argue that primary reliance on objective corroboration constitutes the illegality of the secretary's practice and policy. I assume that plaintiffs, as is their prerogative, are arguing both points. I've already held, without distinguishing between sole and primary reliance, that the secretary is, as a matter of law, guilty of violating the DRA in requiring objective corroboration of subjective complaints of pain in order for him to determine the existence of a medical impairment reasonably capable of producing the alleged pain.

Implicit in the prohibition of "requiring objective proof" is necessarily a prohibition of "sole reliance" on objective factors. These propositions are synonymous. "To require objective proof" precludes a finding of disability in the absence of such proof. "To rely solely on objective proof" similarly precludes a disability determination absent that type of proof. But, "to rely primarily upon objective proof" is, strictly speaking, distinct from "requiring" objective proof. "To rely primarily on objective proof", theoretically allows room for a disability deter-

mination to be made without objective proof. "primarily" is not an absolute term, unlike "to require" or "solely". Hence, while prohibition of the secretary's "requiring" objective proof also invalidates his "sole reliance" upon objective proof, it does not, in a linguistic sense, also prohibit "primary reliance". I am precise in this regard because I wish to avoid any misunderstanding. Language is my "sole" means of acheiving this end.

Allowing, however, the absence of objective corroboration of subjective complaints to be *primarily* dispositive of a disability would defeat the spirit and purpose of the Act. Linguistics aside, the distinction between sole and primary is de minimis. If an adjudicator were permitted to rely primarily on objective evidence, a claimant's subjective complaints of pain and third party subjective but clinically acceptable evidence in support of that alleged pain, would be too easily disregarded. Permitting objective evidence to determine the extent and disabling effect of pain to control primarily a disability determination would encourage the very kind of mechanical adjudication which Congress intended to terminate.

To permit primary reliance on objective evidence is to fail to recognize that pain, whether stemming from a crippled spine or psychotic delusions, is a function of the mind. Claimants over whom I have jurisdiction will not be subjected to this type of casuisitic analysis in violation of the DRA.

The Act places subjective complaints of pain, subjective corroboration and objective corroboration on equal footing. Defendant is correct in stating that the legislature was particularly concerned with the SSA's failure to consider objective medical evidence of pain. However, Congress never intended to subordinate subjective allegations and supporting subjective third party evidence to an objective override. Rather, the Act is an admonishment to the SSA that it should start paying due and equal deference to all evidence in determining disability. Objective evidence is just one factor.

Defendant mischaracterizes plaintiffs' argument to be that a claimant's subjective and unsupported allegations should take precedence over objective factors. I don't believe this is plaintiffs' argument and I by no means intend for this order to be construed in that fashion.

### a. The Secretary's Policy

■ That the secretary relies primarily on objective factors is not in dispute, as he has admitted as much on numerous occassions in the course of this litigation. In an internal memorandum addressing how pain should be evaluated, the secretary's representative stated

[W]e must continue to rely on objective medical findings as the primary determinant of the presence and severity of pain

. . .

Patricia M. Owens, Associate Commissioner for Disability, to the Atlanta Regional Commissioner for the Social Security Administration, December 18, 1984). SSR 82–58 similarly premise the determination of pain related disability upon objective factors. While these documents also contain language indicating that deference must be given to subjective factors, the tenor of these internally binding documents and their execution indicates otherwise. Further, in the context of denying that he relies solely on objective corroboration, the secretary takes the position that nothing in the Act precludes his primary reliance on objective evidence.

I hold the secretary's evaluation of pain for disability purposes is illegally inconsistent with § 3 of the DRA insofar as it relies primarily on objective medical evidence in determining whether a claimant has a medical impairment reasonably likely to produce the alleged pain and whether the claimant does in fact suffer a disability.

### b. The Secretary's Practice

The secretary's disposition of a number of class member's benefits claims indicates his primary reliance on objective corroboration in the second part of the test.

In the case of intervenor Higgins, his claim for disability was denied because "[t]he Appeals Council ... (was) not persuaded by *available medical evidence* that the claimant's back impairments would preclude him from performing substantial gainful activity." Attachment M, plaintiffs' brief (emphasis added). This finding was made notwithstanding the original adjudicator's finding of a medically determinable impairment (step 1), and that the claimant's complaints of pain were "credible and persuasive". Exhibit A to class action complaint in intervention, By denying claimant disability benefits for want of objective proof in satisfaction of the second prong of the analysis, the appeals council impermissibly denied claimant disability benefits.

A medical impairment, chronic bursitis, was also found to exist in the case of Magdalena Luna. The ALJ found Mrs. Luna's allegations of disabling pain credible and that she was entitled to disability benefits. The appeals council overturned the finding of disability, however, noting that

subjective symptoms must be evaluated in light of the objective medical evidence in this case which indicates only a slight limitation of range of motion of the shoulders and x-rays (which) showed only degenerative changes.

Plaintiffs' brief, p. 21. The appeals council ignored Mrs. Luna's subjective allegations of pain, and claim of disability primarily, if not solely, for want of additional objective support.

Another example of this form of analysis is the ALJ decision in the case of Joan Miller. Ms. Miller was diagnosed as having degenerative disease, verified by x-ray. She testified that she is in constant pain and cannot stand or sit for any length of time. She wears a brace which limits her mobility and is unable to perform most household chores. The ALJ dismissed her allegations of severe and limiting pain, noting that they were

persuaded by the absence of those other specific clinically observable and demon-

strable medical signs indicating severe pain such as muscle spasms, muscle atrophy, and neurological deficits".

Plaintiffs' brief, p. 23.

### c. The Secretary's Primary Reliance—A Matter of Law

I have already held, specifically, that requiring (solely relying upon) objective evidence with respect to a pain caused disability determination is illegal under the Act. I have found, as a matter of law, that the secretary's evaluation of pain is violative of the Act in this respect. (This finding of illegality, alone, sufficiently justifies my affording plaintiffs relief). More specifically, in the context of the secretary's two-part test, I have held that requiring (solely relying upon) objective evidence in determining a medical impairment, (step 1), is not permitted by the Act. I have found, as a matter of law, that the secretary's evaluation of pain is illegal in this regard.

■ With respect to the second part of the test, I have found that either primary or sole reliance on objective factors in determining disability is in derogation of the DRA. I now find that the Secretary is guilty of primarily relying upon objective factors in the second part of the test. However, I cannot find, as a matter of law, that the secretary *solely* relies upon objective evidence in the second part of the test. When asked whether the secretary disregards allegations of disabling pain solely because of lack of objective evidence, the secretary stated that "he does not interpret § 3 of P.L. 98–460 to permit allegations of pain to be disregarded under any circumstances." Harris G. Factor, Interrogatory # 6. Because of the difficult burden imposed upon a summary judgment movant, I must accept this declaration as true in this procedural context. This narrow, partial denial of summary judgment, however, does not vitiate my general finding that the secretary is in violation of the DRA.

### C. Defendant's Motion for Summary Judgment

Because of the findings I have made with respect to plaintiffs' motion for summary judgment, defendant's motion for summary judgment is denied. The defendant's method of evaluating pain, his reliance primarily or solely on objective medical evidence to corroborate subjective allegations of pain, is inconsistent with the DRA, § 3.

## II. RELIEF

### A. Jurisdiction

The Social Security Act itself provides for district court judicial review in 42 U.S.C. § 405(g), which states, *inter alia,*

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ...

Ostensibly, and as the secretary argues, 405(g) precludes judicial review of any denial of a claim for disability benefits until after a hearing and final decision.

The administrative "final decision" requisite to judicial review has been broadly defined in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct 893, 47 L.Ed 2d 18 (1976). That case concerned social security benefits which were unconstitutionally terminated without a pre-termination hearing. In upholding the district court's exercise of jurisdiction, the Supreme Court dichotomized the "final decision" condition to judicial review, noting that

> The condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be waived by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have been presented. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.

*Id.,* 424 U.S. at 328, 96 S.Ct. at 899.

■ *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) held that a claimant had satisfied the non-waivable

pre-requisite to § 405(g) judicial review merely by filing an application for benefits. *See also, Trujillo v. Schweicker,* 558 F.Supp 1058, 1063 (D.Colo.1983). The secretary apparently concedes that the non-waivable aspect of the exhaustion requirement, that of presenting a claim to a secretary, has been satisfied by the named class members.[6]

■ Issues concerning the waivable portion of the "final decision" requisite, i.e. exhaustion, remain to be resolved. While whether exhaustion should be waived normally rests with the secretary, there are cases

> where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate.

*Eldridge,* 422 U.S. at 330, 96 S.Ct. at 900. This is such a case. I shall determine whether plaintiffs' administrative remedies need be exhausted before I may order appropriate relief.

■ The Supreme Court has adopted a "practical approach" to judicial waiver of exhaustion. *Id.,* 424 U.S. at 331, n. 11, 96 S.Ct. at 900, n. 11. Among the factors to be considered are the "collateral and constitutional nature of the claim, the irreparability of the harm which would befall plaintiffs if judicial review were delayed, and the futility or efficacy of further exhaustion. *Id.*

■ With regard to the futility and efficiency of continuing administrative procedures,

> Once a benefit claimant has presented his or her claim to a sufficiently high level of review to satisfy the Secretary's administrative needs, further exhaustion would not merely be futile to the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest.

*Weinberger v. Salfi,* 422 U.S. 749, 765–766, 95 S.Ct. 2457, 2467, 45 L.Ed 2d 522, 539 (1975). The illogic and imprudence of requiring exhaustion after the secretary is staunchly committed to an illegal position has been recognized in a class action context. *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3rd Cir.1977).

Permitting the class members to endure further administrative obduracy in this case would be futile and a waste of administrative resources. The secretary is adamant in his belief that subjective complaints of pain are insufficient to establish a disability unless substantiated by objective medical evidence. While certain of the class members could climb another rung of the secretary's appeals ladder, they would receive the same analysis and determination they have received to date. The secretary would apply the same flawed method of evaluation, only at a higher level of review. For practical purposes, the secretary's determination of the class members' claims are final. Further exhaustion is futile.

Further delaying judicial review would cause irreparable harm and mandates that I waive the exhaustion requirement. The *Eldridge* court permitted judicial waiver of exhaustion largely because

> Eldridge has raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not compensable through retroactive benefits.

*Id.,* 422 U.S. at 331, 96 S.Ct. at 901. In the instant case, the plaintiffs and their families colorably rely upon the disability benefits, now denied, to provide for the necessities of life. They have had to endure the emotional strain and mental anguish of being without a reliable source of income. Denial of jurisdiction and deference to the administrative mechanism which has already proved itself incapable of properly applying congressional mandates, and its

---

**6.** I have no jurisdiction over those unnamed class members who at this time have not presented a claim for benefits to the secretary. However, since the secretary is enjoined from executing his illegal construction of the DRA, any future SSI or SSDI benefits applicants, who allege pain related disability, will be within the protection afforded by this order.

own regulations, would cause the type of irreparable harm which justifies judicial waiver of the exhaustion requirement. *See City of New York v. Heckler*, 742 F.2d 729, 736 (2nd Cir.1984).

In a case similar to the one now before me, *Mental Health Association of Minnesota v. Heckler*, 720 F.2d 965, 970 (8th Cir.1983), the Seventh Circuit upheld the district court's waiver of the exhaustion requirement, noting

[C]lass members who have been denied benefits or who have had benefits terminated have suffered serious harms such as deterioration of their medical conditions, disruption of physician-patient relationships, inability to pay for essential medications, and agitation and extreme anxiety associated with attempting to pursue the administrative process. These harms concern the very medical condition on account of which benefits were awarded or are sought. These harms are not recompensable through a retroactive award of benefits.

(*Mental Health Association of Minnesota v. Schweiker*, 554 F.Supp 157, 166 (D.Minn 1982)).

*See also, Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984); and *City of New York*, 742 F.2d at 736. This circuit, as well, has found that exhaustion should be waived

in those cases involving the presence of constitutional questions, coupled with a showing of inadequacy of the prescribed administrative relief against the backdrop of threatened or impending irreparable injury flowing from the delay incident to pursuit of the available administrative remedies.

*McGrath v. Weinberger*, 541 F.2d 249, 251 (10th Cir.1976).

In *Eldridge* the Supreme Court implicitly found the constitutional and "collateral" nature of the plaintiff's claim for relief to have been a factor in its decision to affirm judicial waiver of exhaustion: "Eldridge's constitutional claim is entirely collateral to his substantive claim of entitlement," 424 U.S. at 330, 96 S.Ct. at 900; the finality requirement "should, if possible, be con-

strued so as not to cause crucial collateral claims to be lost". *Id.*, n. 11. Plaintiffs' claims do have a constitutional basis. They allege that the secretary's non-compliance with the Act violates the due process clause of the Fifth Amendment. Because of the constitutional nature of the claim, the secretary has no special expertise in adjudicating the claims raised. Nor is the secretary in any unique position to determine whether his own conduct is in compliance with the Act. This is appropriately an issue for a judicial forum. Accordingly, the deference usually paid to an administrative agency is inappropriate in this instance.

Admittedly, the instant claims are not wholly collateral to the claimants' substantive claims for benefits; the secretary's unlawful failure properly to assess claimants' allegations of pain is somewhat intertwined with their demand for benefits. *See City of New York*, 742 F.2d at 737. This, however, is just one of many factors recognized by the Supreme Court which must be considered in determining the propriety of judicial waiver of exhaustion. *Eldridge*, 424 U.S. 319, 96 S.Ct. at 893 and *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed 2d 622 (1984), do not specifically delineate the factors or their priorities. Nor does the Supreme Court state that the absence or presence of one is dispositive. In this vein, upon balancing the competing interests, waiver of exhaustion is appropriate notwithstanding the lack of strict collaterality. *City of New York*, 742 F.2d at 736.

### B. Declaratory Judgment

█ Plaintiffs seek a declaratory judgment that the secretary *must* evaluate claims of disability based in whole or in part on pain-related functional limitations with the following analysis:

1) A medically determinable physical or mental impairment must be established by anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques.

2) Once a medically determinable impairment is established, all of the evidence must be fully considered to determine if the claimant is functionally limited by his or her pain to the degree alleged. This includes an analysis of:

   a.  statements of the claimant,

   b.  observations of third parties,

   c.  observations of treating and examining physicians,

   d.  the claimant's prior work record,

   e.  the claimant's daily activities,

   f.  duration, frequency and intensity of the claimant's pain,

   g.  precipitating and aggravating factors of the pain,

   h.  dosage, effectiveness and side effects of medication,

   i.  functional restrictions imposed by pain,

   j.  objective test results,

   k.  whether the medically determinable impairment shown can reasonably be expected to produce pain.[7]

3) An objective basis which supports the degree of severity of subjective pain is not the primary basis for decisions regarding pain-related functional limitations. It is just one factor to be considered along with those enumerated in paragraph 2, above.

The entire premise of the request for this declaration is that the two-pronged approach of the secretary is not only permitted, but required by the statute. I disagree with this presumption. I do not partially grant plaintiffs' motion for summary judgment in that context. My holding is simply that the secretary has unlawfully injected an objective proof requirement into the evaluation of pain, which is recognized by the language, tenor and structure of the Act, to be inherently subjective.

In response to the actual two part method used by the secretary, and the format in which plaintiffs' chose to argue their case, I have specifically addressed the two part test. As well, since the statute was drafted with the secretary's practices in mind, it is amenable to execution under a two pronged format discussed at length earlier in this opinion.

In the context of that paradigm, I hold that the secretary violated the first element because he admits to requiring objective proof of a medically determinable impairment. I have held that the secretary violates the second part of his own test because he admittedly relies primarily on objective evidence to satisfy that portion of the test. Due to the presence of genuine issues of fact, however, I am unable to find that the secretary has violated the second prong by solely relying on objective corroboration. I hope I have made clear, however, that either sole or primary reliance on objective evidence in the second part of the test is violative of the DRA, § 3 and of this, the secretary is guilty.

While I am unable to find, as a matter of law only, that the secretary has violated the Act by solely relying on objective evidence in the second part of the test, I *have* specifically found violations in other respects and of the Act taken as a whole. My ability to remedy the secretary's defalcations with declaratory relief is inherently within my jurisdiction, notwithstanding plaintiffs' failure to prove complete illegality of the secretary's test as a matter of law.

I decline to declare, however, how the secretary *must* evaluate pain. If the secretary continues to evaluate pain with his current two step approach, I declare that the method of analysis contained in paragraphs 1, 2 and 3, above, is consistent with the Act. If the secretary wishes to evaluate pain with a different model, he is free to do so. I declare, however, that no matter the analytical paradigm employed, it is illegal and inconsistent with the Act for the secretary to fail to find a claimant is disabled primarily or solely because of the absence of objective corroboration of the claimant's subjective allegations of disabling pain. It is illegal for the secretary to require objective proof of a medical impair-

---

**7.** This consideration may fit into either step one or step two of the secretary's analysis.

ment which could reasonably produce the alleged disabling pain, or the alleged disabling pain itself.

## C. Injunctive Relief

■ In addition to a declaration that the secretary improperly evaluates pain, plaintiffs' seek injunctive relief. I am inclined to grant this relief. In *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Supreme Court approved of injunctive relief in a class action suit brought to remedy the secretary's illegal application of the Social Security Act. I quote at length from that opinion:

The Secretary's reading of the statute is too grudging. Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction ... Nothing in either the language or legislative history of § 205(g) (i.e., 42 U.S.C. § 405(g), the statutory grant of judicial review over social security cases) indicates that Congress intended to preclude injunctive relief in § 205(g) suits.

Injunctions can play an essential role in § 205(g) litigation ... In class actions, injunctions may be necessary to protect the interests of absent class members and to prevent repetitive litigation. While the grant of injunctive relief makes the Secretary's duty to comply enforceable by contempt order, "[s]urely Congress did not intend § 205(g) to provide reluctant federal officials with a means of delay in the remote eventuality that they might not feel bound by the judgment of a federal court" ...

*Id.*, 442 U.S. at 705, 99 S.Ct. at 2559 (citations omitted and paranthetical phrase added).

I am aware that "mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts". *Citizens Concerned Etc. v. City & Cty. of Denver*, 628 F.2d 1289, 1299 (10th Cir.1980). This case, however, presents such a compelling circumstance.

I perceive no lesser means capable of vindicating the class members' statutory and constitutional rights. With cognizance of Fed.R.Civ.P. 65(c), I find the following injunctive relief to be appropriate:

1) The secretary shall from this date forward evaluate the claims of all named class members before him in accordance with the findings and declarations of this order; to wit: the secretary shall not fail to find an SSI or SSDI claimant is disabled solely or primarily because of the lack of objective corroboration of subjective allegations of pain at any point in the secretary's analysis.

2) The secretary shall as soon as practicable re-evaluate the claim for disability benefits of all named class members, without regard to the point in the administrative adjudicatory process their claims have reached, at the administrative level at which all claims for disability benefits are originally considered.

3) The secretary shall identify all unnamed class members as soon as practicable from the date of this order by sending each individual claimant denied benefits notice of this action advising them that the determination of their claim may have been erroneous, that lack of objective corroboration of their subjective allegations of pain is not dispositive, and if they contend they are disabled in whole or in part by pain related functional limitations, their claims may be reviewed under the proper pain standard commencing at the lowest level of review and with retention of all administrative and judicial rights of appeal, upon return to the secretary of a postage prepaid reply within 60 days of the date notice is sent to them. Individuals denied class membership shall be allowed an opportunity to appeal that determination through the administrative process as if their claim for benefits were an original one.

4) The secretary shall

a. afford plaintiffs' counsel reasonable access to the files of all putative class members, in confidence, so that they might verify compliance with this order;

b. provide plaintiffs' counsel with copies of all policy statements or directives issued by the secretary for the purpose of verifying compliance with this order;

c. provide the court and plaintiffs' counsel with quarterly reports regarding progress in implementing this order.

## III. CLASS CERTIFICATION

■ I originally certified and defined this class as

All current and future SSDI and SSI applicants and recipients residing within the State of Colorado who (1) have presented or will present a claim to the secretary that they are or continue to be disabled, and (2) have had or will have their claim evaluated by defendant's, their successors, agents, and employees, and (3) whose claim has been or will be denied in whole or in part due to defendant's failure to follow the rule of law in *Celebrezze v. Warren,* and *Dvorak v. Celebrezze* with regard to the proper evaluation of symptoms of pain. The class excludes applicants and recipients denied benefits due to non-disability factors, applicants and recipients engaged in substantial gainful activity, and persons who fail to cooperate with the determination of their claims and persons whose whereabouts are unknown.

The proper analysis of pain symptoms in this circuit before congressional enactment of § 3 of the Act, was set forth in *Celebrezze v. Warren,* 339 F.2d 833 (10th Cir. 1964):

The (Appeals) Council determination that Warren is not disabled is based principally upon ... the fact that there was no proof of organic cause, and the intensity of pain cannot be measured by objective standards ...

The lack of medically determinable organic cause for the existence of Warren's pain appears to have been one of the significant factors considered by both the examiner and the Appeals Council. However, a defect does not cease to exist merely because it is difficult of proof ...

The disability contemplated by the Act is not restricted to that which is subject of proof by laboratory findings.

*Id.,* 339 F.2d at 837–38.

While the language used in *Celebrezze v. Warren* is distinct from the nomenclature currently in vogue, its ruling on how pain is evaluated is consistent with the DRA. Both the pre-DRA Tenth Circuit precedent and the Act recognize that pain may be truly felt and truly disabling without being corroborated by objective proof. Neither the Act nor *Celebrezze v. Warren* require objective proof to support a finding of 1) a medically determinable impairment and 2) a disability based on pain resulting from that medically determinable impairment. It is the secretary's deviations from these principles which are being called into question by this class action. Pursuant to Fed.R. Civ.P. 23(c), a class certification order may be "altered or amended before the decision on the merits." Considering the enactment of the DRA and in light of my findings regarding the illegality of the secretary's regulations and policy, the class certification is hereby amended, *sua sponte,* to provide as follows:

The class is composed of all current and future SSDI and SSI applicants and recipients residing within the State of Colorado who (1) have presented or will present a claim to the Secretary that they are or continue to be disabled, and (2) have had or will have their claim evaluated by defendant, their successors, agents, and employees, and (3) whose claim has been or will be denied in whole or in part due to *defendant's use of overly broad, misleading regulations* and/or defendant's failure to follow the rule of law in *Celebrezze v. Warren* and *Dvorak v. Celebrezze, his own regulations and/or § 3 of the Social Security Disability Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A)* with regard to the proper evaluation of symptoms of pain. The class excludes applicants and recipients denied benefits due to non-disability factors, applicants and recipients engaged in substantial gainful activity, and persons who fail to cooperate with the

determination of their claims and persons whose whereabouts are unknown.

Accordingly, it is hereby ordered that

1. Plaintiffs' motion for summary judgment is granted as set forth in this opinion;

2. Plaintiffs' motion for declaratory relief is granted as set forth in this opinion;

3. Plaintiffs' motion for injunctive relief is granted as set forth in this opinion.

4. Defendants' motion for summary judgment is denied.

5. Defendants' motion for vacation of class certification is denied.

6. The order for class certification is amended, *sua sponte*, as set forth in this opinion.