**Judy L. JONES, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 90–1492–T.**

United States District Court, D. Kansas.

Oct. 21, 1992.

David H.M. Gray, Hiebsch, Gragert, Hiebert, Gray & Davisson, Wichita, Kan., for plaintiff.

Stephen K. Lester, Office of U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter comes before the court on cross-motions for summary judgment. Plaintiff seeks reversal of the Administrative Law Judge's ("ALJ's") determination that she is not disabled within the meaning of Title II and Title XVI of the Social Security Act. 42 U.S.C. 401 *et seq.*, 42 U.S.C. 1381 *et seq.* Defendant seeks affirmance of the ALJ's order.

The plaintiff's testimony on the administrative record reveals the following facts. Plaintiff was born on December 23, 1951. (Tr. 45, 32). She is a high school graduate who has worked in a variety of jobs categorized as "light work," including waiting tables and counter help at a seed store. (Tr. 17). Plaintiff has also completed training as a medical assistant. (Tr. 39–40).

In the words of the ALJ, "this is basically a 'pain' impairment case." (Tr. 18). Late in May 1985, while working at the seed store, plaintiff injured her back and shoulders by trying to catch a falling fifty-pound bag of feed. (Tr. 33, 116). Plaintiff was off work for two weeks, but then returned to "limited duty." (Tr. 33, 115). Plaintiff continued to work until June 1986 when her absenteeism and inability to perform certain tasks became unacceptable and her employer asked her to resign. (Tr. 33–34). Plaintiff filed a workers' compensation claim, which has settled. (Tr. 33).

Since plaintiff's accident, she has seen several doctors. Dr. M. Ray Kenoyer is

plaintiff's treating physician. (Tr. 117). Dr. Ernest Schlachter, who saw plaintiff in connection with her workers' compensation claim, diagnosed the atrophy in the dorsal paraspinous muscles, the muscles between the shoulder blades. (Tr. 116). He noted that plaintiff complained of "nagging" pain, but that she could lift up to forty pounds without persistent pain. (Tr. 116). He found that aside from the injury, plaintiff was in "excellent physical condition." (Tr. 116). He determined that plaintiff had a ten percent permanent partial disability and restricted plaintiff to lifting twenty-five to thirty pounds repeatedly and single lifts of forty-five pounds. (Tr. 116).

Dr. Kenoyer referred plaintiff to Dr. Gregg Snyder, a neurologist. (Tr. 117–18). Dr. Snyder found no atrophy in plaintiff's muscles and found that the results of tests he gave were normal. (Tr. 119–121). He could explain plaintiff's claims only in terms of "chronic strain and sprain syndrome." (Tr. 120). Dr. Snyder stated that he believed plaintiff was symptomatic, but that in the absence of any positive neurological findings, he could recommend only symptomatic treatment. (Tr. 121). Dr. Kenoyer then ordered some functional abilities tests performed, from which he concluded that plaintiff had a permanent partial disability of 61% of the back. (Tr. 122–23).

In August 1986 and February 1988, plaintiff saw Dr. Guillermo Garcia, who specializes in sports medicine. (Tr. 132–35). Dr. Garcia found chronic dorsalgia of the type that would improve from avoiding manual labor. (Tr. 133). He determined that no physical therapy would help plaintiff. (Tr. 134). He recommended that she take Advil and antidepressants and that she join a group for sufferers of chronic pain. (Tr. 134).

On August 8, 1988, Dr. Schlachter examined plaintiff once again and noted slight improvement in her condition. (Tr. 136). He again found atrophy in plaintiff's muscles and concluded that it was permanent. (Tr. 136). It was his opinion that Dr. Snyder's diagnosis is inherently suspect because he did not notice the obvious atrophy in plaintiff's dorsal paraspinous muscles. (Tr. 136). Dr. Schlachter again recommended the lifting restrictions. (Tr. 137).

After the ALJ's determination, but before the Appeals Council considered the case, plaintiff was examined by Dr. Dominador Perido, who ordered Cybex testing. (Tr. 167). Dr. Perido, like the previous doctors, diagnosed the atrophy in the dorsal paraspinous muscles. (Tr. 167). However, Dr. Perido also diagnosed marked atrophy in plaintiff's left lumbar and left gluteal muscles. (Tr. 167). It is his opinion that this problem explains plaintiff's complaints of pain, easy fatigability, and loss of balance. (Tr. 189–90). In order to stand or sit for any length of time, plaintiff must expel great energy to compensate for the atrophied muscles. (Tr. 189). Consequently, Dr. Perido believes plaintiff cannot work for more than one hour at a time, with significant periods of rest in between. (Tr. 189). He placed plaintiff on lifting restrictions of no more than ten pounds and told her that she should engage in no physical activity other than walking and swimming for short periods of time. (Tr. 191). Dr. Perido recognized that other doctors had failed to find atrophy in the left lumbar and gluteal muscles. (Tr. 184). He expressed the opinion that because plaintiff had complained of neck and upper back pain, the previous doctors had confined their examinations to those areas. (Tr. 184).

Plaintiff has tried several kinds of therapy for her condition, but has met with little success. She has used a TENS unit, which relieved plaintiff's pain but caused allergic reactions that prevented her from continuing such treatment. (Tr. 38). Plaintiff has also taken pain killers, but because of her allergies, she has had to change prescriptions and uses these medications only during her bad spells. (Tr. 35–36). Plaintiff has made little progress with physical therapy. (Tr. 133).

Plaintiff has been able to maintain some daily activity. She regularly sees her sixteen-year-old son off to school, sometimes driving him, does some light housework (such as dusting), fixes meals, and reads. (Tr. 40–44). A friend visits her regularly,

but does not always stay more than thirty minutes. (Tr. 41, 43). Four times daily, plaintiff takes muscle relaxers and then sits for approximately one hour to allow the medication to take effect. (Tr. 42). On the occasions when the medication does not work, she cannot perform normal household tasks. (Tr. 42). She has gone dancing with her boyfriend twice, but had to leave within thirty minutes when the pain became intolerable. (Tr. 47). Plaintiff cannot vacuum, push a grocery cart, or do yard work. (Tr. 36, 43). She testified that typing exacerbates her condition. (Tr. 39). Plaintiff was a passenger on one ten-hour car trip to Colorado; this required reclining in the car seat with a pillow and stopping regularly to "stretch her legs." (Tr. 43).

When asked to rate her level of pain on a scale of one to ten, ten being excruciating pain, plaintiff stated that her pain is continuously at a seven to eight level and occasionally higher. (Tr. 45). The episodes of excruciating pain occur as often as once a month and last anywhere from two to seven days. (Tr. 36–37, 45–46). During these episodes, plaintiff spends the entire day in a recliner with a heating pad. (Tr. 37). At those times, it is painful for plaintiff even to comb her hair. (Tr. 37).

Plaintiff testified that she does not stand for more than two hours at a time and does not believe she could do so without aggravating her condition. (Tr. 50).

On June 28, 1988, plaintiff filed a claim for Social Security benefits under Title II, 42 U.S.C. §§ 401 *et seq.*, and Title XVI, §§ 1381 *et seq.* (Tr. 59–61). The Secretary denied her claims initially and on reconsideration. (Tr. 68–69, 90–91). Plaintiff received an administrative hearing, after which the ALJ found that plaintiff was not disabled. (Tr. 15–21). The Appeals Council affirmed. (Tr. 4–5).

A vocational expert testified at the administrative hearing. His responses to a series hypothetical questions revealed that a person who could lift ten pounds frequently and twenty pounds occasionally could do light work. (Tr. 53). However, light work also requires the ability to stand for five to six hours at a time.[1] (Tr. 54). Sedentary work is available to some people who cannot do light work. However, ninety percent of sedentary work requires repetitive gross or fine hand movement, which plaintiff claims she cannot do. (Tr. 55). The vocational expert testified that the inability to perform repeated gross or fine hand movement leaves the following options in Kansas: approximately 800 positions for security system monitors; approximately 500 positions as telephone quotation clerks; and approximately 3000 sedentary cashier positions. (Tr. 55–56). Lastly, he testified that missing one day's work a month would be acceptable to most employers, but missing three or more days of work per month would be unacceptable to nearly all employers and would thus preclude employment. (Tr. 57).

■ The Secretary uses a five-step process for deciding whether a Social Security claimant is disabled. The Tenth Circuit Court of Appeals summarized the process as follows:

> In evaluating an applicant's condition to determine whether a disability exists, a series of questions are asked in turn. *See* 20 C.F.R. 404.1520(a) etc. If the claimant is presently pursuing work that constitutes gainful activity, then that person is not disabled, even if medically impaired. If the claimant is not presently doing substantial gainful activity, then the question is asked—does the claimant have a severe impairment which significantly limits his physical or mental ability to do basic work activities? If not, there is no disability. If the claimant has a severe impairment, then the question is asked—does that impairment meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, and if it has lasted or can be expected to last for at least 12 months, the person is considered disabled and there is no need to proceed further. If the impairment

---

1. For example, plaintiff's pre-accident employment was as a waitress and counter help at a seed store. (Tr. 17). The ALJ found that plaintiff was unable to return to that type of job. (Tr. 20).

does not meet or equal a listed impairment, then the question is asked whether the impairment, when considered along with the applicant's residual functional capacity and the physical and mental demands of the job, prevent the applicant from doing past relevant work? If not, then there is no disability. If, however, claimant can not return to past work, the final question is whether the residual functional capacity, age, education, and work experience allow the performance of other work. If not, a finding of disability will be made.

*Kemp v. Bowen,* 816 F.2d 1469, 1474–75 (10th Cir.1987). This case was decided on the basis of the fifth step. At this step, the burden is on the Secretary to show that there is work in the national economy that the plaintiff could perform, taking into account her residual functioning capacity, age, education, and work experience. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988).

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh the evidence or substitute its decision for that of the ALJ. *Talbot v. Heckler,* 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence, however, must be more than a mere scintilla. *Perales,* 402 U.S. at 403, 91 S.Ct. at 1428. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot,* 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed.

456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze,* 345 F.2d 894, 897 (10th Cir. 1965).

Plaintiff's basic argument is that there is not substantial evidence in the record as a whole to support the ALJ's decision. Plaintiff asserts first that the Appeals Council did not properly consider the new evidence she submitted with her request for review. Second, plaintiff claims the ALJ committed several errors in his analysis of plaintiff's claim: improperly analyzing plaintiff's pain and credibility; considering only the evidence in favor of the Secretary's position; and impermissibly ignoring some testimony of the vocational expert.[2]

I. Appeals Council's analysis of new evidence

When plaintiff requested review by the Appeals Council, she submitted as additional evidence the findings of Dr. Perido. Dr. Perido diagnosed the same problems that had been found before. However, he also noted atrophy in plaintiff's left lumbar and left gluteal muscles and stated that this explained plaintiff's severe pain, fatigability, and inability to stand or sit for long periods of time. He expressed the opinion that plaintiff was disabled. The Social Security regulations dictate when the Appeals Council is to consider additional evidence.

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law

---

**2.** Plaintiff also asserts that the ALJ failed to fully and fairly develop the record in that he did not consider the additional impact of plaintiff's mental impairments. However, because of the court's rulings on the other issues, it is not necessary to consider plaintiff's mental condition or its effect on her ability to perform substantial gainful activity.

judges' action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). In this case, the Appeals Council considered the new evidence, but denied the request for review. The Council stated:

"The Administrative Law Judge's conclusion that your pain would not preclude you from performing a wide range of sedentary work is supported by the evidence of record and it provides a basis for rejecting Dr. Perido's conclusion that you are unable to perform sustained work activities."

(Tr. 5). Plaintiff argues that the Appeals Council did not give proper consideration to the new evidence.

The Secretary here argues that the new evidence was neither new nor material. The Appeals Council implicitly found that the evidence was new and material by considering the evidence. The court agrees with the Appeals Council on this matter. The evidence was new because Dr. Perido diagnosed atrophy in muscles that the other doctors had not examined. The evidence was material because it provided objective medical evidence of the symptoms plaintiff had alleged at the hearing.

■ The Secretary also argues that the evidence does not relate to the time before or during the administrative hearing. The court disagrees. Although Dr. Perido examined plaintiff several months after the administrative hearing, the timing of the examination is not dispositive. *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir.1990). Dr. Perido's analysis gives an objective medical explanation for plaintiff's complaints before and at the administrative hearing of extreme pain, easy fatigability, and inability to stand or sit for extended periods of time. The significance of Dr. Perido's diagnosis, therefore, is that it lends plaintiff's claim the credibility that the ALJ apparently found lacking. Furthermore, there is nothing to indicate that the conditions Dr. Perido found were newly developed. Dr. Perido testified at his deposition that although the other doctors had not diagnosed atrophy of the lumbar and gluteal muscles, this was probably because their examinations concentrated on plaintiff's neck and upper back. (Tr. 184).

■ Once the Appeals Council considers new evidence, it becomes part of the record for review in the district court. The Eighth Circuit Court of Appeals in *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992), summarized the district court's role in a case where the claimant challenges the Appeals Council's treatment of new evidence.

The newly submitted evidence is to become part of ... the "administrative record," even though the evidence was not originally included in the ALJ's record. *Browning v. Sullivan*, 958 F.2d 817, 823 n. 4 (8th Cir.1992). If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material. *See Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir.1990). If, as here, the Appeals Council considers the evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence, which now includes the new evidence, to support the ALJ's decision.

*Id.* Therefore, in deciding whether the ALJ's decision is supported by substantial evidence, the court will consider all the medical evidence, including Dr. Perido's findings. The court rejects the approach of the Appeals Council in this case. Certainly, if new evidence is to be considered, it should not be disregarded simply because it conflicts with the evidence before the ALJ.

**II. Analysis of plaintiff's pain and credibility**

The ALJ described his analysis of pain impairments as follows:

A review of the record in it's entirety persuades the Administrative Law Judge that this is basically a "pain" impairment case. Although the Social Security Act requires that when evaluating the issue of disability, consideration must be given to the claimant's subjective description of symptoms such as pain, the law provides that an individual will never be found

disabled solely on the basis of such subjective symptoms. There must be independent and objective medical evidence consisting of acceptable clinical signs and diagnostic findings which can be deemed to be consistent with the degree and persistence of pain being alleged.

In evaluating the degree of pain being suffered by this claimant, several factors must be considered including the medical reports, the opinions of the treating physicians, the claimant's use of medication, the claimant's daily activities, the claimant's testimony and motivation, and the claimant's prior work history. This evaluation has been performed in light of the *Luna v. Bowen* [834 F.2d 161 (10th Cir. 1987)] criteria as established by the Tenth Circuit Court of Appeals and Social Security Ruling 88–13. In the present case there is a paucity of signs and findings to substantiate that the claimant's condition produces symptoms and limitations which were totally incapacitating.

(Tr. 18).

■ The ALJ committed two major errors in his analysis. First, he clearly applied the wrong standard to the claim. Plaintiff does not allege, nor must she prove, that she is "totally incapacitated." [3] Under the Social Security Act the relevant question is whether plaintiff's condition renders her unable to perform "substantial gainful activity." Application of an incorrect legal standard is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987); *Byron v. Heckler*, 742 F.2d 1232 (10th Cir.1984).

■ Second, the ALJ did not follow the proper steps for analyzing pain cases. The Tenth Circuit Court of Appeals described the procedure for analyzing pain as follows:

If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." At this stage, the decision maker takes the subjective allegations of pain as true in determining whether they are reasonably related to the proven impairment. He does not evaluate the claimant's credibility. If the nexus between impairment and pain alleged is insufficient, the claimant cannot receive benefits based upon disabling pain. If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling. This evidence includes the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain. Only at this point may the decision maker decide whether he believes the claimant's assertions of pain.

*Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir.1987) (citations omitted).

■ The first step requires only a loose nexus between the alleged pain and the medical evidence. "[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." *Id.* at 164. In this case there is no argument that plaintiff has a medically diagnosed condition that is reasonably expected to produce pain.

■ At the second step, the ALJ is to consider several factors, including the claimant's credibility, persistent attempts to find relief, willingness to try any treatment prescribed, regular contact with physicians, daily activities, medication, and psychological disorders. *Id.* at 165–66.

Here the ALJ followed a different analysis. He first decided that the medical evidence was consistent with a finding of a lesser degree of pain than what plaintiff claimed. *See Calandro v. Bowen*, 697 F.Supp. 423, 428 (D.Wyo.1988). This shows that the ALJ asked the wrong ques-

---

**3.** The court believes this standard was intentionally applied. Later in the opinion the ALJ noted that plaintiff's "daily activities do not suggest that she is totally incapacitated." (Tr. 18).

tion at the first step. Moreover, the ALJ's conclusion, in light of the findings of Dr. Perido, is not supported by substantial evidence.

The ALJ's second step was to conclude that because the medical evidence could indicate less severe pain, plaintiff's testimony was not credible. The ALJ did not disclose any evidence that the plaintiff's complaints of pain were truly inconsistent with the "independent and objective medical evidence." Again, looking at the medical evidence as a whole, including the new evidence, there is not substantial evidence that plaintiff's claims are not credible. Furthermore, the ALJ did not give proper consideration to the other relevant factors. The ALJ did not mention plaintiff's visits to several doctors, her various attempts to find relief, or her willingness to try to work after the accident. As discussed below, the ALJ misstated and improperly abstracted evidence of the plaintiff's daily activities. The ALJ did note one fact in plaintiff's favor, her steady work record prior to the accident, but dismissed it as "only one factor to be considered." (Tr. 19).

## II. Treatment of unfavorable evidence

 In deciding a claim for disability benefits, the ALJ must consider all the evidence and not just that which is favorable to his position. In this case, the ALJ improperly abstracted the evidence to support a denial of benefits. *See Claassen v. Heckler,* 600 F.Supp. 1507, 1511 (D.Kan. 1985). The decision mischaracterizes or ignores evidence favorable to the plaintiff and overemphasizes evidence favorable to the Secretary.

The ALJ improperly abstracted evidence in order to conclude that plaintiff was "fairly active." (Tr. 18). In some cases, the ALJ's statements do not fairly reflect the testimony. For example, the ALJ stated that plaintiff and her boyfriend "go out dancing albeit for a short period of time." (Tr. 19). The testimony was that they tried to go dancing twice, but they had to leave

after fifteen to thirty minutes because of the pain plaintiff experienced. (Tr. 47). The decision contains other half-truths regarding plaintiff's daily activities. The ALJ noted that plaintiff enjoys latch-hook (Tr. 19) although plaintiff testified that she had not done latch-hook for two years. (Tr. 43). The decision notes that plaintiff took a ten-hour car trip to Colorado. (Tr. 19) It does not mention, however, that plaintiff did not drive on the trip (Tr. 44), or that she sat in a reclined position with a pillow and made regular stops to "stretch her legs." (Tr. 43–44).

The ALJ completely ignored testimony of plaintiff's limitations. She cannot perform yard work. (Tr. 43). She cannot vacuum. (Tr. 36). When she shops for groceries, her son or her boyfriend accompany her because she cannot push the cart or reach some of the items. (Tr. 36, 43)

The ALJ also overemphasized the importance of some activities. It is true that plaintiff reads for enjoyment and that some friends visit her frequently. However, engaging in these activities is consistent with the inability to perform "substantial gainful activity." In all likelihood, the ALJ's analysis was skewed by his belief that plaintiff had to prove "total incapacity."

The ALJ found that plaintiff had "chronic strain and sprain syndrome," which would cause some pain. (Tr. 20). Curiously, this is the language used by Dr. Snyder, the only doctor who failed to diagnose the marked atrophy in plaintiff's dorsal paraspinous muscles. The ALJ's findings do not mention the atrophy. This provides further evidence that the ALJ misstated the evidence to justify finding for the Secretary.

## III. Treatment of the vocational expert's testimony

 There is no dispute that plaintiff cannot perform light work or most sedentary work.[4] The crucial issue is

4. The appeals council stated that the ALJ had found that plaintiff could perform a "wide range of sedentary work." (Tr. 5). Despite the appeals council's interpretation, the court reads

the ALJ's decision to say that plaintiff cannot perform a "wide range of sedentary work." First, the ALJ found that "The claimant's allegations and that of her boyfriend regarding her

whether there is substantial evidence that plaintiff would be able to work regularly enough that she could maintain employment in the limited fields in which she can perform the necessary tasks. A claimant is entitled to disability benefits if she cannot perform substantial gainful activity on a reasonably regular basis. *See Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). Plaintiff claims that the ALJ improperly ignored testimony by the vocational expert that a high rate of absenteeism would preclude employment.

In this case, the vocational expert testified that three to four days of absenteeism per month would be unacceptable to nearly all employers. (Tr. 57). He also testified that missing one day of work per month would probably be acceptable to most employers. (Tr. 57). The ALJ elicited this testimony, as well as the plaintiff's testimony that she has episodes of excruciating pain once a month, that these episodes last between two and seven days and that during those episodes she must lie down all day with a heating pad.[5] The ALJ gave no reason to discredit the testimony. There is nothing at all in the record to indicate that plaintiff's testimony was not credible, and the new evidence provides objective support for plaintiff's claims.

 The ALJ claimed to consider the evidence in the light most favorable to the plaintiff. (Tr. 19). It appears, however, that the ALJ again ignored the evidence to support his finding in the Secretary's favor. The purpose of vocational expert testimony is to determine whether jobs exist for someone with the claimant's precise disabilities. *Jelinek v. Bowen,* 870 F.2d 457, 459 (8th Cir.1989). Vocational testimony elicited by hypothetical questions that do not relate with precision the claimant's impairments does not constitute substantial

evidence to support the Secretary's decision. *Id.* at 461. Here, if the ALJ considered the effect of absenteeism at all, he relied on answers to the hypothetical questions that did not relate to plaintiff's condition. The ALJ ignored answers to the relevant questions. When a vocational expert is asked a hypothetical question based on substantial evidence, the ALJ cannot ignore unfavorable answers. *Campbell v. Bowen,* 822 F.2d 1518, 1523 n. 6 (10th Cir. 1987).

The court finds there is not substantial evidence that plaintiff would be able to work regularly enough to maintain employment. The evidence shows that plaintiff has two- to seven-day episodes of excruciating pain each month. During those episodes, she follows her doctor's advice to stay in bed with a heating pad. (Tr. 37). Furthermore, when plaintiff was working, she missed two, three, or more days each month. The ALJ improperly ignored the testimony of the vocational expert that plaintiff's absenteeism would preclude employment.

## VII. Conclusion

The evidence on record clearly indicates that plaintiff has an objectifiable medical impairment that causes her substantial pain. There is no argument that plaintiff cannot perform most sedentary work or any work in the higher exertion categories. Furthermore, the evidence shows that plaintiff is totally incapacitated approximately three days per month and that this would preclude employment.

The burden was on the Secretary to show that plaintiff could perform substantial gainful activity despite her impairments. The Secretary's decision that plaintiff could perform sedentary work is not supported

---

limitations are not found inconsistent with an *in*ability to perform a wide range of sedentary jobs." (Tr. 20) (emphasis added). Second, the vocational expert testified that a person with plaintiff's exertional and nonexertional limitations would be unable to perform ninety percent of the sedentary jobs in the national economy. He testified to only three jobs that a person in plaintiff's condition could perform if absenteeism was once a month.

**5.** The Secretary urges this court to interpret once a month to mean "one day a month" and conclude that absenteeism would not prevent plaintiff from working. The Secretary ignores plaintiff's testimony that her periods of excruciating pain typically last two to seven days and that she was absent from her previous job at least two to three days a month. (Tr. 36–37).

by substantial evidence. The testimony of the vocational expert provides substantial evidence that plaintiff cannot perform sedentary work on a regular basis. There is no medical or other evidence in the record to the contrary. The record shows that plaintiff cannot perform sedentary work, which is the lowest grade of work recognized by the regulations. Since additional factfinding would serve no purpose, the court reverses and remands to the Secretary with directions to award disability benefits to the plaintiff.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to affirm (Doc. 12) is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Doc. 10) is hereby granted. The decision of the Secretary is reversed, and this action is remanded to the Secretary with directions to award disability benefits to plaintiff.