Mae F. EDGAR, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civ. A. No. 92–1449–FGT.

United States District Court, D. Kansas.

July 29, 1994.

Joan H. Deans, J.H. Deans Law Office, Raytown, MO, for plaintiff.

Stephen K. Lester, Office of U.S. Atty., Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiff's motion for judgment reversing the decision of the Secretary of Health and Human Services which denied plaintiff disability benefits. (Doc. 11). The defendant opposes plaintiff's motion and moves for an affirmance of the Secretary's decision. (Doc. 13).

On July 30, 1990, plaintiff filed an application for disability benefits under Title II, 42 U.S.C. §§ 401 et seq. (Tr. 67–69). The Secretary denied plaintiff's claim initially and on reconsideration. (Tr. 79–81, 93–94). Plaintiff received an administrative hearing on May 20, 1991, after which the Administrative Law Judge ("ALJ") found that plaintiff was not disabled at any time before her insured status expired. (Tr. 8–18). The Appeals Council denied plaintiff's request for review. (Tr. 3–4). Thus, the decision of the ALJ rests as the Secretary's final determination.

Plaintiff was born on February 20, 1954. (Tr. 25). She has a tenth grade education. (Tr. 46). Plaintiff has worked as a packer in several factories, leaving the last of such positions in May 1988. She has since attempted to clean houses for a living, but testified that she was unable to perform the work. (Tr. 42). Plaintiff also attempted an office skills course, but her impairments prevented her from completing the course. (Tr. 40). Plaintiff's insured status expired on March 31, 1989. (Tr. 10).

Plaintiff alleges multiple physical impairments. Her main impairment, however, is severe bilateral carpal tunnel syndrome. (Tr. 37). Plaintiff testified that the problems with her hands began in 1974. (Tr. 26). Plaintiff has undergone carpal tunnel releases on her both hands. (Tr. 121–129; 131–136). It is undisputed that the carpal tunnel syndrome prevents plaintiff from performing her past relevant work and any other work that requires repetitive hand motions. Plaintiff testified that some mornings, she cannot use her hands at all for two to three hours.

She testified that she sometimes cannot grasp a pencil or a toothbrush. Plaintiff testified that the pain sometimes radiates up her arm. (Tr. 56).

In addition to carpal tunnel syndrome, plaintiff has suffered from trigger fingers bilaterally which further limits plaintiff's ability to use her hands. (Tr. 165–173). Plaintiff has undergone surgeries for this problem. (Tr. 165–173). Plaintiff is overweight and has high blood pressure, which is controlled by medication. (Tr. 10). She also had an ankle impairment which prevents her from standing for long periods of time. (Tr. 50–51). Furthermore, plaintiff has fibrocystic disease in her left breast. (Tr. 140–152). This condition requires occasional medical treatment, but does not otherwise affect plaintiff's ability to work. (Tr. 140–152). Plaintiff testified that she had recently begun to have difficulty sitting, and there is evidence of a recent back problem. (Tr. 45). However, there is neither any evidence nor an allegation that these problems were in existence during the period of plaintiff's insured status.

Plaintiff sought no medical treatment for her carpal tunnel syndrome or her other impairments between her alleged onset date and the date her insured status expired. Plaintiff testified that she is afraid to see doctors because they always find something wrong that requires surgery. (Tr. 32). Plaintiff has even made appointments and failed to keep them. (Tr. 34). Plaintiff testified that the cost of medical care is also a factor in her avoidance of medical treatment. (Tr. 33).

Plaintiff testified that she has taken Advil and Darvocet for her pain. (Tr. 38, 56–57). Plaintiff testified that she quit taking Advil because it caused kidney problems. (Tr. 38, 56). Plaintiff testified that she takes two to three Darvocet tablets per day. (Tr. 57). She testified that the Darvocet causes drowsiness and that she frequently falls asleep while reading. (Tr. 57).

Plaintiff is married and has three children. (Tr. 44). She testified that her husband and children help with the housework because she cannot perform it alone. (Tr. 44). Her children also help dress her some days. (Tr. 29). Plaintiff does some cooking, makes her bed, and does some dusting and laundry. (Tr. 29–44). Plaintiff can drive short distances. (Tr. 43). Plaintiff testified that most

of her daily activities revolve around her church, where she spends every evening and all day Saturdays. (Tr. 47). She testified that she prays two to three hours per day, studies the Bible approximately two hours per day, teaches children once a week, visits shut-ins twice a week, and attends choir rehearsal once a week. (Tr. 42, 48). Plaintiff testified that she sometimes takes notes while studying the Bible, but usually uses a tape recorder because her hand impairment prevents her from writing. (Tr. 45).

A vocational expert testified at the administrative hearing. The ALJ asked the vocational expert to consider the following hypothetical situation: a woman in her thirties, who is literate and has a tenth grade education; the woman's main problem is bilateral carpal tunnel syndrome which would prevent her from repetitive or constant hand use, but would not prevent occasional gripping or grasping; she has a problem with her left ankle that would limit walking or standing to no more than thirty minutes and would limit climbing and bending; she is grossly obese; she has no sitting limitation. (Tr. 60–62). The vocational expert was asked whether such a person could perform any work that exists in significant numbers in the national economy. (Tr. 62). The vocational expert responded that such a person could perform certain sedentary jobs, namely security monitor (approximately 3,600 positions in Missouri) and companion or personal attendant to the blind or elderly (approximately 3,200 positions in Missouri). (Tr. 62, 63). The vocational expert further testified that there was a possibility such a person could perform child care or work in a nursery school (approximately 6,600 positions in Missouri). (Tr. 62–63). The vocational expert also testified that if the person was taking medication which caused drowsiness and caused her to fall asleep during sedentary activities, this would prevent her from working. (Tr. 65).

Plaintiff's two treating physicians are Dr. Reginald Hall, an internist and Dr. David Zamierowski, the surgeon who performed plaintiff's carpal tunnel surgeries. The records include medical assessments by both treating physicians. Both concluded that plaintiff meets the Social Security listing for amputation or anatomical deformity of both hands. (Tr. 193, 197). Both stated that plaintiff's impairments would be expected to cause pain in plaintiff's hands and fingers and that work could exacerbate her condition. (Tr. 194, 198). Both doctors further stated that plaintiff's pain medications would reasonably be expected to cause significant drowsiness. (Tr. 195, 199).

The ALJ concluded that plaintiff was not disabled. (Tr. 17). The ALJ determined that although plaintiff could not stand for long periods of time and could not use her hands constantly or repetitively, she was not limited in her ability to sit during the relevant time frame and could occasionally use her hands. (Tr. 10–12). The ALJ found that plaintiff's claims as to pain and side effects of medication were not fully credible. (Tr. 14, 16). In so finding, the ALJ relied heavily on the plaintiff's lack of medical care during the relevant period of time and her "sporadic" earnings record. (Tr. 12–13). The ALJ concluded that plaintiff's daily activities were inconsistent with a claim of disability. (Tr. 14–15). The ALJ found that plaintiff could perform the jobs discussed by the vocational expert. (Tr. 15–16).

The Secretary uses a five-step process for deciding whether a Social Security claimant is disabled. The Tenth Circuit Court of Appeals summarized the process as follows:

> In evaluating an applicant's condition to determine whether a disability exists, a series of questions are asked in turn. *See* 20 C.F.R. 404.1520(a) etc. If the claimant is presently pursuing work that constitutes gainful activity, then that person is not disabled, even if medically impaired. If the claimant is not presently doing substantial gainful activity, then the question is asked—does the claimant have a severe impairment which significantly limits his physical or mental ability to do basic work activities? If not, there is no disability. If the claimant has a severe impairment, then the question is asked—does that impairment meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, and if it has lasted or can be expected to last for at least 12 months, the

person is considered disabled and there is no need to proceed further. If the impairment does not meet or equal a listed impairment, then the question is asked whether the impairment, when considered along with the applicant's residual functional capacity and the physical and mental demands of the job, prevent the applicant from doing past relevant work? If not, then there is no disability. If, however, claimant can not return to past work, the final question is whether the residual functional capacity, age, education, and work experience allow the performance of other work. If not, a finding of disability will be made.

*Kemp v. Bowen*, 816 F.2d 1469, 1474–75 (10th Cir.1987). This case was decided on the basis of the fifth step. At the fifth step, the burden is on the Secretary to show that there is work in the national economy that the plaintiff could perform, taking into account her residual functional capacity, age, education, and work experience. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). In this case, the ALJ used the testimony of a vocational expert to determine that plaintiff was capable of performing certain sedentary work which would not involve repetitive hand motions. (Tr. 15–16).

 The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh the evidence, or substitute its decision for that of the ALJ. *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot*, 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB*, 340 U.S.

474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

The plaintiff in this case submitted evidence to the Appeals Council that was not presented to the ALJ. The new evidence consists of Dr Zamierowski's assessment of plaintiff's medical condition. The Appeals Council considered this new evidence in denying plaintiff's request for review. It is therefore part of the administrative record, and the court must consider the new evidence, along with the evidence that was before the ALJ, in deciding whether substantial evidence exists to support the ALJ's determinations. *See Jones v. Sullivan*, 804 F.Supp. 1398, 1404 (D.Kan.1992).

The plaintiff argues that the ALJ erred in his step five determination. The court agrees. Specifically, the ALJ did not follow the proper steps for analyzing pain cases. The Tenth Circuit Court of Appeals described the procedure for analyzing pain as follows:

If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." At this stage, the decision maker takes the subjective allegations of pain as true in determining whether they are reasonably related to the proven impairment. He does not evaluate the claimant's credibility. If the nexus between impairment and pain alleged is insufficient, the claimant cannot receive benefits based upon disabling pain. If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling. This evidence includes the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of

the claimant's pain. Only at this point may the decision maker decide whether he believes the claimant's assertions of pain. *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir.1987) (citations omitted).

The first step requires only a loose nexus between the alleged pain and the medical evidence. "[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." *Id.* at 164. In this case there is no argument that plaintiff has a medically diagnosed condition that is reasonably expected to produce pain.

At the second step, the ALJ is to consider several factors, including the claimant's credibility, persistent attempts to find relief, willingness to try any treatment prescribed, regular contact with physicians, daily activities, medication, and psychological disorders. *Id.* at 165–66.

In this case, the ALJ did not explicitly make the first step determination. As stated above, however, plaintiff's impairments are reasonably expected to produce some pain. At the second step, the ALJ noted that plaintiff did not seek medical treatment for her hand impairments during the months between her alleged onset date and the date her insured status expired. The ALJ also noted plaintiff's low income level and sporadic earnings record. Finally, the ALJ relied heavily on his finding as to plaintiff's daily activities. For the above reasons, the ALJ determined that plaintiff's testimony as to her pain lacked credibility.

■ An ALJ, in deciding a disability claim, is obligated to consider all the evidence and not just that evidence which is favorable to the Secretary's position. In this case, the ALJ improperly abstracted the evidence to support a denial of benefits. *See Claassen v. Heckler,* 600 F.Supp. 1507, 1511 (D.Kan. 1985). The decision mischaracterizes or ignores evidence favorable to the plaintiff and overemphasizes evidence favorable to the Secretary.

■ First, the ALJ emphasized that plaintiff did not seek medical attention during the period between leaving her job and the date her insured status expired. However, the ALJ failed even to consider plaintiff's testimony that she feared seeing doctors because they always found a problem that required surgery. Plaintiff also testified that she could not afford medical treatment.

Second, the ALJ relied on plaintiff's "sporadic" earnings record, noting three periods of unemployment. Although plaintiff did have periods of unemployment, the ALJ failed to consider plaintiff's statement that she quit working outside the home for two years after her son was born. (Tr. 69). Plaintiff's credibility is not diminished by her decision to stay home with her young child.[1]

■ As for plaintiff's daily activities, the ALJ found that plaintiff engaged in "a significant amount of volunteer church activity on a daily basis which is inconsistent with a disabling severity of symptoms." (Tr. 14–15). This finding is not based on substantial evidence. Plaintiff's testimony reveals that praying and reading the Bible occupy at least four hours per day. This activity does not reveal an ability to perform any substantially gainful activity. Furthermore, although plaintiff testified to teaching Sunday school, singing in the church choir, and visiting shut-ins twice a week, there is no evidence that these activities were of a duration that would indicate an ability to perform substantial gainful activity. As this court has previously held, a claimant need not show that she is totally incapacitated in order to receive disability benefits. *Jones,* 804 F.Supp. at 1405.

The ALJ ignored the evidence that plaintiff tried different fields of employment before applying for disability benefits. Plaintiff attempted a vocational education to prepare her for work in an office. Not surprisingly, plaintiff's severe carpal tunnel syndrome prevented her from completing this course of study. After leaving her job as a packer, plaintiff tried to work cleaning houses and ironing for others. As the ALJ noted, this work was too heavy for plaintiff to perform.

---

1. In fact, although the matter was not explored at the hearing, it appears that each of plaintiff's periods of unemployment occurred shortly after the birth of one of her children.

Although these endeavors are more strenuous than those the ALJ found plaintiff could perform and, as such, are not particularly relevant to the level of plaintiff's impairment, they do speak favorably to plaintiff's motivation to work and, thus, to her credibility.

Finally, the ALJ improperly discounted plaintiff's claims as to the side effects of her medication. In particular, plaintiff testified that she took Darvocet daily, which caused significant drowsiness. Plaintiff testified that she often fell asleep while reading. The ALJ did not find that Darvocet would not cause drowsiness. Rather, he disbelieved plaintiff's testimony that she took Darvocet on a regular basis. Although the ALJ is correct that the medical records are not clear as to what medications plaintiff took during the relevant time frame, both of plaintiff's treating physicians stated that significant drowsiness was an expected side effect of the medications plaintiff took. Regardless of whether plaintiff continually took Darvocet or switched pain medications, there is not substantial evidence for the ALJ's finding that plaintiff's pain medication did not cause significant drowsiness. The vocational expert testified that if plaintiff would fall asleep on the job, she would be unemployable.

The plaintiff asserts that the ALJ committed additional errors in considering her disability claim. However, the court need not address those issues.

The evidence on record clearly indicates that plaintiff has an objectifiable medical impairment that limits her ability to perform job related functions and causes her substantial pain. There is no dispute that plaintiff cannot perform most sedentary work or any work in the higher exertion categories. Furthermore, the evidence shows that plaintiff's pain medications cause drowsiness which would make her unemployable. The ALJ's findings as to the level of plaintiff's pain, the side effects of her medication, and the level of her impairment are not supported by substantial evidence.

The burden was on the Secretary to show that plaintiff could perform substantial gainful activity despite her impairments. The Secretary's decision that plaintiff could perform certain sedentary work is not supported by substantial evidence. In fact, the testimony of the vocational expert, when all the relevant facts were considered, provides substantial evidence that plaintiff cannot perform any work on a regular basis. There is no medical or other evidence in the record to the contrary. The record shows that plaintiff cannot perform sedentary work, which is the lowest grade of work recognized by the regulations. Since additional factfinding would serve no purpose, the court reverses and remands to the Secretary with directions to award disability benefits to the plaintiff.

**IT IS BY THIS COURT THEREFORE ORDERED** that the plaintiff's motion for judgment (Doc. 11) is hereby granted.

**IT IS FURTHER ORDERED** that the defendant's motion for judgment (Doc. 13) is hereby denied.

The decision of the Secretary is reversed, and this action is remanded to the Secretary with directions to award disability benefits to plaintiff.