**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARGARET SANDOVAL,

      Plaintiff-Appellant,

 v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 06-2066
(D.C. No. CIV-04-1391 WDS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[**] District Judge.

---

Claimant Margaret Sandoval appeals from an opinion and order entered by

a United States Magistrate Judge[1] that affirmed the decision of the Commissioner

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]     The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

[1]     The parties consented to the jurisdiction of the magistrate judge.

of Social Security (Commissioner) to deny her application for disability insurance benefits and/or supplemental security income. Because the decision is supported by substantial evidence and the correct legal standards were applied, we affirm.

BACKGROUND

Ms. Sandoval filed her application on June 21, 2002, alleging disabling back pain, depression and anxiety, as of September 1, 2000, when she was thirty-nine years old. Following the administrative denial of her claim, she appeared at a hearing before an administrative law judge (ALJ) in March 2004, during which she, her ex-husband, and a vocational expert testified.

In his June 2004 decision, the ALJ applied the five-step sequential evaluation process required by *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), and determined that Ms. Sandoval was not disabled. At step three the ALJ found that although she had a combination of impairments that were severe, they did not meet or medically equal any of the Commissioner's listing of impairments. At step four he found that she retained the residual functional capacity (RFC) to perform routine, supervised light work, and, specifically, her past job as an electronics assembler. Last, at step five he found that even if she could not perform her past relevant work, there were other jobs in significant numbers in the regional and national economies that she could perform.

After the Appeals Council denied Ms. Sandoval's request for review, she filed this action in district court. The magistrate judge entered an opinion and order that affirmed the Commissioner's denial of benefits. This appeal followed.

STANDARD OF REVIEW

We review the ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotation marks omitted). We base our review on the whole record; therefore, "we . . . meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial," but we "neither reweigh the evidence nor substitute our discretion for that of the Commissioner." *Id.* (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (internal quotation marks and brackets omitted).

ANALYSIS

*Disabling Pain*

Ms. Sandoval claims that at step three, the ALJ improperly evaluated her complaints of disabling pain and also failed to consider all of the objective and subjective evidence, including the testimony of her ex-husband. We disagree.

Although the objective medical evidence did not establish the existence of disabling lower back pain, the medical records contained Ms. Sandoval's own reports of severe pain. Therefore, she was "entitled to have [her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence." *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (quotation marks omitted).

The framework for analyzing disabling pain under these circumstances takes into account whether (1) there is objective medical evidence of a pain-producing impairment; (2) there is a loose nexus between the pain-producing impairment and the subjective allegations of pain; and (3) the pain is in fact disabling, considering all of the objective and subjective evidence. *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). "Objective" evidence is physiological or psychological evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective" evidence is statements by the claimant or other witnesses that can be evaluated only on the basis of credibility." *Id.* at 162 n.2.

As to the first two *Luna* factors, the ALJ acknowledged that the objective medical evidence established that Ms. Sandoval had "mild degenerative disc disease" and "a little arthritis in her back." Aplt. App., Vol. I at 27. Having found some objective evidence of a pain-producing impairment and a loose nexus between the impairment and her subjective allegations of disabling pain, *Luna* next "required [the ALJ] to consider her assertions of severe pain and decide whether he believed them." *Kepler*, 68 F.3d at 391 (quotation marks and brackets omitted).

In deciding whether to believe a claimant's assertions of disabling pain, there are "certain factors an [ALJ] should take into consideration when considering the credibility of pain testimony." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).

> Some of the possible factors include: the levels of medication and their effectiveness, the extensiveness of attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (quotation omitted).

Importantly, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by

substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

Our review of the ALJ's decision confirms that he specifically mentioned many of the foregoing factors when evaluating Ms. Sandoval's allegations of disabling pain. For example, while her MRIs and x-rays showed some arthritis and mild degenerative disc disease, he noted the consultative physical examination in which the physician said "from a physical, orthopaedic, and neurological perspective, there were no significant signs necessitating limitations in life or work activities," and "the source of her complaints is unclear." Aplt. App., Vol. I at 154.

Further, the ALJ found that the nature of Ms. Sandoval's daily activities included "driving and shopping when necessary, visiting, doing housework, and conducting other routine activities." *Id.* at 28. He acknowledged that she testified that she was severely limited in her ability to sit, stand, walk, and lift. However, he found her "complaints of debilitating back pain are disproportionate to the objective findings and are not fully credited." *Id.* He explained that "[h]er contention that she can only walk short distances and sit from ten to twenty minutes has no real support in the medical record. [She] has no spinal canal narrowing or spinal cord impingement. [The consulting physician] could hardly account for her complaints at all. [Her] level of degenerative changes is seen to be essentially age appropriate." *Id; see also id.* at *154*.

Admittedly, the ALJ did not specifically mention Ms. Sandoval's pain medications, the single epidural steroid injection she received in her lower back, or describe each and every medical contact. He did, however, state that in addition to her testimony, he considered "all of the evidence of record" and "the evidence, as a whole." Aplt. App., Vol. I at 25, 28. "[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Ms. Sandoval next argues that the ALJ's failure to specifically mention a July 25, 2003 report of Thomas J. Whalen, M.D., means that he did not consider all of the objective medical evidence. In his report, Dr. Whalen noted that the source of her lower back pain is "degenerative disk disease" and "lumbar facet arthropathy." Aplt. App., Vol. I at 211-12. The ALJ's decision acknowledges that she suffers from "mild degenerative disk disease" and "a little arthritis in her back," which is consistent with Dr. Whalen's impressions. *Id*. at 27.[2] The mere diagnosis of a condition, however, does not prove its severity, and a concomitant disability. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (holding that the mere presence of a condition is not necessarily disabling).

---

[2] "Lumbar facet arthropathy" is more commonly known as degenerative arthritis that affects the facet joints in the spine. Taber's Cyclopedic Medical Dictionary 169 (19th ed. 2001), defines "arthropathy" as "an inflammatory joint disease, such as rheumatoid arthritis."

Ms. Sandoval also argues that the case must be remanded because the ALJ did not specifically mention or pass on the credibility of the testimony of her ex-husband, Daniel Sandoval. Again, we disagree. Because Mr. Sandoval's testimony was cumulative of Ms. Sandoval's testimony, the ALJ's failure to specifically discuss his testimony or pass on its credibility is not grounds for reversal. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (rejecting a rule requiring an ALJ to make specific written findings concerning each witness's credibility); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (holding that an ALJ is not required to discuss every piece of evidence.)

*RFC Assessment and Hypothetical Question*

Ms. Sandoval claims that the ALJ's step-four finding that she could perform her past relevant work as an electronics assembler must be reversed because he failed to follow the three-phase analysis in *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996).[3] In determining whether a claimant's impairment prevents her from performing past relevant work, the ALJ must evaluate her physical and mental RFC, the physical and mental demands of her past relevant work, and

---

[3] Relying on confusion in the transcript, Ms. Sandoval argued in her opening brief that the ALJ's determination that she could perform her past relevant work or other jobs had to be reversed, because it was unclear whether they were supervised or unsupervised jobs. A corrected transcript supplied by the Commissioner establishes that the ALJ's questions and the vocational expert's responses concerned supervised work. She does not challenge the corrected transcript in her reply, and we do not address this issue on appeal.

whether she has the ability to meet the job demands despite her physical and mental limitations. *Id.* at 1023.

Read closely, Ms. Sandoval's challenge is nothing more than a disagreement with the findings made by the ALJ – not a misapplication of *Winfrey* analysis to the facts. As stated by the magistrate judge in his opinion, "[her] arguments might have merit if the ALJ had uncritically accepted the entirety of [her] testimony. However, these arguments are based on testimony that was rejected by the ALJ as not credible." Aplt. App., Vol. 2 at 63. We agree with the magistrate's conclusion that the ALJ's factual findings are supported by substantial evidence.

Relying on *Hargis,* 945 F.2d at 1492, which requires that hypothetical questions relate a claimant's impairments with precision, Ms. Sandoval's final contention of error is the ALJ's failure to include in his question to the vocational expert that she was moderately limited in her ability to understand and remember detailed or complex instructions.

As background, this limitation appears in a "Psychiatric - Psychological Source Statement Of Ability To Do Work-Related Activities" prepared in November, 2002, by Tony Kreuch, an examining neuropsychologist. Aplt. App., Vol. I at 160. What Ms. Sandoval fails to recognize is that Dr. Kreuch's accompanying "Psychological Consultative Examination," does not mention this limitation, and finds only that her "concentration is mild-to-moderate impaired,"

but she has "the ability to understand and remember basic instructions." *Id*. at 158.

This is the evidence that the ALJ relied on for his finding that she "retains the ability to understand and follow [basic] instructions, but [has] 'moderate' limitation in her ability to sustain concentration, persistence, and pace. Accordingly, she is best suited for routine, supervised types of work." *Id*. at 28. And this is the evidence he relied on in posing his hypothetical question to the vocational expert about the need for "routine" and "supervised" work. *Id*. at 287.

Hypothetical questions to a vocational expert need only include those limitations that the ALJ finds are established by substantial evidence. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Here, the ALJ did not find that Ms. Sandoval's asserted moderate limitation in her ability to understand and remember complex and detailed instructions was supported by substantial evidence, and therefore, it was not error for the ALJ to have not included this restriction.

We also disagree with Ms. Sandoval's argument that if the ALJ had apprised the vocational expert about this limitation, the expert would have concluded that she lacked the reasoning skills for her past relevant work or the other jobs. Ms. Sandoval bases this argument on Appendix C of the Dictionary of Occupational Titles (DOT), which requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions,"

for the jobs the expert testified she could perform.  DOT, Vol. II, App. C, 1011

(4th ed. Rev. 1991).  This argument is based upon a misreading of Appendix C.

For example, the job description for a small products assembler, DOT

No. 739.687-030 (one of several jobs that the vocational expert testified that

Ms. Sandoval could perform), is followed by a trailer that states:  "*GOE: 06.04.23*

*STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 81*."  DOT, Vol. II at 772.

Appendix C explains that the reasoning, mathematical, and language descriptions

(*R2 M1 L1),* refer to the *educational development* required for a job:

> General Educational Development (GED) embraces those aspects of
> education (formal and informal) which are required of the worker for
> satisfactory job performance.  This is education of a general nature
> which does not have a recognized, fairly specific occupational
> objective.  Ordinarily, such education is obtained in elementary
> school, high school, or college.  However, it may be obtained from
> experience and self-study.

*Id.* at 1009, 1112.

The adequacy of Ms. Sandoval's educational development is not in dispute,

and, therefore, the ALJ's failure to include a restriction concerning her ability to

understand and remember complex instructions in his hypothetical question to the

vocational expert is immaterial to the outcome of the case.

The judgment is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge

-11-